UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MAGISTRATE-JUDGE'S |
| | ) | NO. 04-849-MBB |
| | ) | |
| JULIO DANIEL GRANDE | ) | |

OPPOSITION TO GOVERNMENT'S MOTION
TO RECONSIDER RELEASE

Defendant, Julio Daniel Grande, submits this memorandum in opposition to the Government's Motion to Reconsider Release ("Government's Motion").

The Government's Motion primarily focuses on the validity of an extradition waiver that the defendant agreed to sign, and which he has now signed. A copy is attached hereto as Exhibit A. While undersigned counsel has been unable to determine the precise requirements of Colombian law, her research has located instances of successful extraditions of Colombian citizens from Colombia. See, e.g., Opening Statement of Rep. Tom Davis, Chair of Committee on Government Reform, June 17, 2004, available at http://reform.house.gov (citing extradition of 90 Colombians to the U.S. during a 16-month period); Testimony of Luis Alberto Moreno, Ambassador of Colombia to the United States at 6, citing the extradition of 200 persons to the U.S. since 1999, for crimes that include money laundering, available at id.

With respect to Venezuela, since Mr. Grande is not a Venezuelan citizen, he simply could be deported or removed from that country.  <u>See</u> Memorandum dated October 16, 1997 from the Office of the Attorney General, citing the arrest and deportation from Venezuela of a Colombian national wanted in the U.S. on drug charges, attached hereto as Exhibit B.  The memorandum boasts that the defendant was returned to the U.S. little more than a month after he was located in Venezuela.

The government's arguments regarding the procedure required to extradite from Colombia and the availability of extradition from Venezuela are, at any rate, beside the point.  The issue of extradition was raised by the <u>defendant</u>, solely in an effort to provide the court with additional assurance that prosecution would be possible even if the defendant were to flee to Colombia.  That remains true.  Money laundering is an extraditable offense, under the 1988 Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances ("1988 Vienna Drug Convention"), to which the U.S. and Colombia both are signatories.

But neither the Miami nor the Boston Pretrial Services Offices predicated its recommendation of release on an extradition waiver, or even on any knowledge of the existence of an extradition treaty between the U.S. and Colombia.  Instead,

those offices – and, presumably, this Court – looked to Mr. Grande's lack of a criminal record, his strong family ties to the U.S., and the amount of bail being offered as security (approximately $75,000 in property).

In addition, this Court had an opportunity to observe the obvious strength of Mr. Grande's bond with his sister, Yuly, as well as her sincerity in her testimony regarding her willingness to post her bond and serve as third party custodian.  The government distorts the evidence when it states that she "admitted she received bank statements from the defendant's Wachovia account[.]"  Undersigned counsel's recollection is that Ms. Grande said that the statements were mailed to Mr. Grande at her address.  While this technically may be characterized as "receiving" the statements, it certainly does not provide any indication that Ms. Grande was a knowing party to any illegal activity.  Indeed, there is absolutely no evidence that Ms. Grande did anything wrong.

The government misstates the evidence regarding the Cardent bank account, in asserting that the affidavit in support of the complaint shows that "$518,000 [the money deposited into Cardent's account] was money orders believed to be drug money." Government's Motion at 3.  In fact, the affidavit states that $518,000 in money orders was deposited into the Cardent account,

without identifying them as suspected drug proceeds.  See Affidavit at 26.  Instead, the affidavit says, "Many of these money orders were also purchased and deposited in a manner similar to that which was described above for the money deposited into the USCL and Grande bank accounts."  Id.  Nowhere does the affidavit assert evidence that the money orders were drug proceeds or even that they came from Colombian Black Market Peso Exchange.

Moreover, the only evidence in the affidavit tying the Cardent account to the defendant is the fact that checks from Cardent were deposited into Grande's account.  Since the defendant was employed by Cardent, this is neither surprising nor sinister.

We submit that the bail and conditions ordered by this Court are more than sufficient to reasonably assure Mr. Grande's appearance at trial.

                                             JULIO GRANDE
                                             By his attorney,

                                             /s/ Miriam Conrad
                                             Miriam Conrad
                                                 B.B.O. # 550223
                                             Federal Defender Office
                                             408 Atlantic Avenue, 3rd Floor
                                             Boston, MA  02110
                                             Tel: 617-223-8061

CERTIFICATE OF SERVICE

    I, Miriam Conrad, hereby certify that a true copy of the above document was served upon U.S. Pretrial Services Officer Joshua Ulrich by delivery on August 5, 2004.

                                                /s/Miriam Conrad
                                                Miriam Conrad